# UNITED STATES DISTRICT COURT
## WYOMING

FILED

U.S. DISTRICT COURT
DISTRICT OF WYOMING

STEPHAN HARRIS, CLERK
CHEYENNE

**Motion under 28 U.S.C. §2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody**

| **Name of Movant** | **Inmate Number** | **Criminal Docket Nos** |
|---|---|---|
| Lauren Elizabeth Scott | Federal Register  18870-081 | 12CR58-02-S |

**Judge:  Honorable Skavdahl**

**Confinement:**        FCI Victorville Med II
                       PO Box 5300
                       Adelanto, CA  92301

**UNITED STATES OF AMERICA**      vs.      **LAUREN ELIZABETH SCOTT**

**District of Wyoming**

**Judgment of Conviction was August 16, 2013**

**Length of Sentence is 57 Months**

**Nature of Offense:  Conspiracy to commit mail and wire fraud and conspiracy to launder money**

**Plea:  Guilty**

**I did not testify at any type of trial.**

**An appeal was filed.**
**Case number: 13-8073 USCA 10th Circuit**
**By choice this appeal was dismissed on December 6, 2013.**

**No other petitions, applications or motions have been filed in any court.**

Facts

In March 2008, I entered into an agreement to sell a corporate structure along with facial recognition technology to Christopher Ponish. A fully executed contract agreement called for a financial payment from Ponish to me in the amount of $1.5 million as full payment for this sale. After the agreement was completed between Ponish and me, all the documents I possessed were turned over to him and he changed the name of the company. I began to receive payments from Ponish against the debt he had incurred.

Additionally, my brother, co-defendant, Robert Reed, along with co-defendants Doss, Adams, Best, and Ponish, were involved in a project to build a wind farm in South Dakota. In their effort to form a new company, they sent me a proposed name, a number of shares, and the name of an officer. I had my assistant send an email with that information to a company I had used in the past for my own corporate formation. How the people involved with forming the new company interacted with the company my assistant directed them to is not known to me. Other than this indirect flow of information regarding the formation of their company, Mountain State Power, Inc., I had no connection nor did I never had anything to do with the business.

The co-defendants pursued their objective of developing and operating their new company. Subsequently, I continued to receive payments against the debt owed me. These payments came from their new company Mountain State Power. I was not privy to how the Mountain State Power partners arranged for payment of the Ponish debt. All I knew was that payments against the Ponish debt were being made to me. I had no reason to believe that anything regarding the payments made to me was improper or illegal.

In April 2011, I was served with legal action initiated by the California Department of Corporations pertaining to Ponish's actions relative to $3 million in funds raised by Ponish and his new company. In the subsequent litigation, the California court ruled that I had no role in their new company. The court confirmed that I was owed the funds delineated in the original agreement and the payments made to me were made as payments toward the debt against the agreement Ponish and I originally entered into.

Based on personal interest, and unrelated to the sale to Ponish, I responded to an ad for ranch land in Wyoming. I placed a $2000. deposit with the real estate company to enable me to conduct due diligence on the land in question. My intent was to purchase the land under the name of Windy Ridge, LLC. I chose to not pursue this purchase and received my deposit back. No contracts or agreements were signed. What I failed to realize is that my brother learned of this potential land purchase by me in Wyoming and the Windy Ridge name I had intended to use.

I later found out that the name "Windy Ridge" was used on the Mountain State Power website in their promotion to raise funds.

Following this court determination, Alex Calero from the California Department of Corporations notified government officials that we (co-defendants and myself) had engaged in the sale of unregistered securities in Wyoming. Subsequently, the U.S. government filed charges of mail fraud, wire fraud, and money laundering.   These charges were based on actions taken by members of the Mountain State Power Company and the fraudulent promotion of my Wyoming land interest with their company. The government's assumption was that the money I received from Ponish toward the payment of his debt to me was a covert plan to purchase the Wyoming land using corporate funds.

My position with the government was that I was properly owed the money from Ponish and was entitled to payment from him. The payments I received to that point had nothing to do with a land purchase in Wyoming. I intended to pursue this position at trial. Amid this collection of occurences, in October of 2012 I filed for personal bankruptcy. In that filing I included the remaining balance of the Ponish debt as a receivable owed to me.

Shortly prior to trial, my attorney, Michael Langford informed me that I did not have enough money to go to trial and my only hope was to enter into a plea agreement.  To do so, he would arrange a proffer.  My response was that even though I was willing to tell and explain everything during the proffer, I needed to go to trial to clear my name and reputation.  I clearly expressed my position as one of complete innocence and a need for a trial to prove it.

My attorney's response was that without money, I would die in prison.  His quote was "you have no money, you have no choice."   The next time I saw my attorney was 30 minutes prior to the proffer session where he told me to admit using an alias. The issue of me using an alias was also incorrect. Therefore, I objected to the stance my attorney had taken pertaining to this point. He stated that I needed to do this because he had secured a deal that would get me 30-60 days in a federal camp followed by home confinement where I would have weekend furloughs to be home with my children. He was emphatic that this was my only choice, my best choice, and that a trial was not an option.

I accepted a plea based on his convincing promise that I would receive home confinement as my sentence. Further, he explained that the agreement contained two downward departures and that the "5K" language would further reduce any sentence rendered by an additional 25%. None of what he promised occurred nor was it accurate. There was no discovery proceeding, no witness statements presented, no investigation into the stated facts, and no trial or sentence hearing preparation. He did not consult with me regarding the allegations, did not challenge any prosecutorial assertions, filed no motions, and allowed the court mandated deadlines to expire. Moreover, he never spoke with me following sentencing. He

never discussed the ramifications of the sentence or what options might be available to me. He refused to accept my repeated calls or those attempted by my mother. I eventually spoke to Langford's partner, Robert Ingram and told him that I had told Langford at the sentencing court that I wanted to appeal, but nothing had been done. On the final day to appeal, Ingram called me to tell me that Langford said that I was not eligible to appeal and that the 10th Circuit would most assuredly dismiss it if I did. I insisted with Ingram to file the appeal. His response was that "Michael does not want you to do this." I insisted that they "do it now." He repeated that he did not want to file it and that Langford "refused" to do it.

## Procedural History

I was charged with 18 U.S.C. 1349. This is conspiracy to commit mail and wire fraud

I was also charged with 18 U.S.C. 1956 (h). This is conspiracy to launder money.

# My Counsel was Constitutionally Ineffective

To prove that counsel was ineffective, I must show that Langford's performance was deficient and that I suffered prejudice from the deficient performance.

*Strickland v. Washington*, 466 U.S. 668 (1984), governs the determination of ineffectiveness at trial, sentencing and appeal. Counsel's assistance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Fifth Circuit has described that standard as requiring that counsel "research relevant facts and law." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999)). "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.* At no time was the prosecutor challenged regarding the facts as I described them. Examples of such are:

1. He simply accepted the prosecutorial theories and did not put any of them to a meaningful adversarial test.
2. His review of Discovery was minimal despite my efforts to provide all needed information.
3. He did not meet court imposed deadlines for discovery or exhibits.
4. He refused to prepare for trial taking the position that we should not go to trial.
5. He failed to investigate any of my statements of fact or prosecution assertions.
6. He failed to keep me apprised of filings or process.

7. He failed to review the PSR with me and failed to object to incorrect PSR statements.
8. He failed to call, interview, or seek witnesses or experts to assist with the case.
9. He failed to challenge bond revocation issues and did not advocate my support my actions to comply with the court orders.
10. He failed to object to statements, assertions, and allegations thus allowing them to be entered as fact.
11. He billed me for research conducted pertaining the sentencing guidelines that he indicated I would be sentenced under. I was sentenced under a different set of guidelines of which he failed to address or understand the implications of.

To prove prejudice, "the defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Proof that a lesser sentence would have been imposed absent counsel's error is sufficient, as "any amount of actual jail time has Sixth Amendment significance," *Glover v. United States*, 531 U.S. 198, 203 (2001), which constitutes prejudice for purposes of the *Strickland* test.

### A. My Counsel was Ineffective for not Properly Informing Me of the Consequences of the Guilty Plea.

On April 23, 2013, Langford told me he and his co-counsel Ingram recommend I accept the plea agreement presented by the government because I had "no choice" unless I came up with $50K in the next two weeks. No financial discussions were held with me up to this point. This was the first I was spoken to about costs by either attorney. Furthermore, Langford told me that I had to admit in the plea agreement that I used an alias and that Robert Reed did as well. I emphatically expressed that this was wrong. His response was that if I did not make this admission "they are going to indict your 87 year old mother." Langford further delineated in very clear terms that "I would not get probation, but this agreement would send me home on home confinement." The only unknown factor, according to him, was the length of home confinement. He clearly stated that he spoke with my husband and daughter at great length and both wanted me to "accept the plea agreement, take the deal, and come home." I later learned that no discussion of this nature was ever held. Upon learning such, I expressed my desire to withdraw from the plea agreement and go to trial. Upon doing so, Langford emailed my daughter and told her that he needed her help to convince me to take the deal.

One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether she should plead guilty. An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea. Apprising a defendant about her exposure under the sentencing guidelines is a necessary part of this process ... "Failing to properly advise the defendant of the maximum sentence that she could receive falls below the objective standard

required by *Strickland*." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) It is submitted that Langford rendered ineffective assistance by inducing me to plead guilty based on misrepresentations as to what my sentence would be. Specifically, counsel stated that I would receive a sentence limited to home confinement with a further reduction of 25% based on an assumption that I would provide further cooperation. An attorney's failure to properly inform the client about her sentencing exposure may constitute ineffective assistance. See *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir.1995) ("[f]ailing to properly advise the defendant of the maximum sentence that she could receive falls below the objective standard required by *Strickland*"). See also *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003) ("By grossly underestimating the defendant's sentencing exposure . . ., counsel breaches his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." ). Langford never bothered to inform me prior to my guilty plea that the prosecutor would not support a home confinement sentence or that the judge may choose to sentence me to the degree that he did. It is simply ludicrous to believe that I, or any other defendant, would ever agree to a guilty plea if they did not believe, quite reasonably, that the attorney was accurate in his assessment of how the sentence would be rendered. If Langford would have explained that the prosecutor may opt to promote a sentence of lengthy incarceration and that the judge could/would impose such, I would have demanded to withdraw the plea and return to my original intent and proceed to trial instead. Thus it can be said there is a strong probability that if not for counsel's errors the proceedings would have been different and I "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**B. My Counsel was Ineffective at Sentencing for failing to object to the use of the Relevant Conduct.**

Langford should have been aware that a possibility existed whereby the prosecutor would advocate and the judge would impose a significant sentence of incarceration.  Had Langford raised objections to the relevant conduct of the prosecutor, the government would have then been obligated to prove by preponderance of the evidence that the charges were valid and that no coercion or promises had occurred.  The Court simply sentenced me on the basis of the relevant conduct enhancements since Langford failed to object.  Thus, I was never given an opportunity to be heard on numerous issues that were brought forth by the prosecution. It is well settled that at sentencing, the district court is required to resolve specifically disputed issues of fact if it intends to use those facts as the basis for its sentence. *United States v. Ponce*, 917 F.2d 841, 842 (5th Cir. 1990). The sentencing guidelines also explicitly require that the sentencing court resolve disputed sentencing factors, regardless of whether the court ultimately determines that departure from guidelines is warranted. *United States v Burch*, 873 F2d 765 (5th Cir. 1989). It is submitted that reasonably competent counsel would have been aware of the well established precedent of the Fifth Circuit that if counsel would have objected to the prosecutor's assertion(s) then the District Court is then required to address a defendant's objections. Langford demonstrated a complete lack of familiarity with the Guidelines. There can be no sound strategy for counsel's failure to object to the use of the relevant conduct. Where defense counsel fails to object to an improper level of understanding and

agreement under the Sentencing Guidelines, counsel has rendered ineffective assistance. *Jansen v. United States*, 369 F.3d 237, 244 (3rd Cir. 2004). See also *Trass v. Maggio*, 731 F.2d 288, 293 (5th Cir. 1984) (holding that ignorance of relevant law constitutes an "identifiable lapse in constitutionally adequate representation"). There was simply no evidence that I would have been found guilty of the charges had I chosen to proceed to trial.

In the circumstances of this case, Langford's failure to object to the use of relevant conduct at the time of sentencing must be deemed to constitute ineffectiveness. It is obvious that Langford was not employing any strategy when he failed to object to the relevant conduct and had I understood the nuances of the United States Sentencing Guidelines I would have requested that Langford object to the rendered sentence. However, I did not understand the inner workings of the Guidelines and Langford never explained any of the issues regarding how the relevant conduct would result in a prison sentence of this magnitude.

As previously mentioned, Langford did not file any written objection, nor did he make any oral objections to the use of the relevant conduct prior to or at the sentencing hearing. Had Langford raised the issue at sentencing, even if it were rejected by the Court, the issue would have at least been preserved for appellate review. Accordingly, it is submitted that reasonable counsel would have brought the relevant conduct objection to the attention of the sentencing court and if not for counsel's failure to object, the outcome at sentencing would have been different.

### C. My Counsel was Ineffective for Failing to Adequately Consult with me about my Right to Appeal or Filing a Notice of Appeal.

*Roe* v. *Flores-Ortega,* 528 U.S. 470 (2000), concerned an ineffective assistance of counsel claim for failure to file an appeal. Flores-Ortega was charged with murder by the State of California and a public defender was appointed to represent him. Flores-Ortega entered an *Alford* plea - denying guilt of the crime but at the same time admitting that there was sufficient evidence to convict him. Flores-Ortega was sentenced and at the hearing, the trial judge informed him of his right to appeal and the time (60 days) within which to file an appeal. Although the public defender wrote "bring appeal papers" in her file, she failed to file a notice of appeal within the delay. During the first 90 days after sentencing, Flores-Ortega was unable to communicate with counsel. About four months after sentencing, he tried to file a notice of appeal, which was rejected as untimely. Flores-Ortega sought state habeas corpus relief, but was unsuccessful. He then filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 alleging constitutionally ineffective assistance of counsel based on his attorney's failure to file a notice of appeal on his behalf after promising to do so. Ultimately, the United States Supreme Court reviewed the case to resolve a conflict in the lower courts regarding counsel's obligation to file a notice of appeal. The Courts of Appeals for the First and Ninth Circuits had followed a bright-line rule that counsel was per se deficient for failing to file a notice of appeal unless the defendant specifically instructed the attorney not to file, while the Second Circuit held that counsel had no duty to file a notice of appeal unless requested by

the defendant. The rules in other circuits fell somewhere between. The starting point for the Court's analysis was *Strickland v. Washington*, 466 U.S. 688 (1984), which set forth the test for a defendant claiming ineffective assistance of counsel. Under *Strickland*, a defendant must show (1) that counsel's representation "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. The Court determined that the starting point to determine whether counsel has performed deficiently in cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken is whether counsel in fact consulted with the defendant about the appeal. Consult has a very specific meaning - "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* 528 U.S. at 478. If counsel has not consulted with the defendant, then the court must decide whether counsel's failure to consult constitutes deficient performance. The Court declined to extend a bright-line rule that counsel must always consult with the defendant regarding an appeal. Instead, it adopted the following rule: Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.* 528 U.S. at 480. The second prong of *Strickland* requires the defendant to show prejudice from counsel's deficient performance. The Court held that to show prejudice when counsel fails to file an appeal, the defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. *Id.* 528 U.S. at 484. Further, when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal. *Id.* Evidence that there were non-frivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will be highly relevant in making the determination of prejudice. *Id.* 528 U.S. at 485-86. The Court then noted that proof of deficient performance and proof of prejudice could in some cases both be satisfied by the defendant showing non-frivolous grounds for appeal. *Id.* At 486. The case was remanded. On remand, the district court denied the writ of habeas corpus. Flores-Ortega appealed. In an unpublished decision, the Ninth Circuit reversed and remanded with instructions to the district court to enter a conditional writ of habeas corpus. The Ninth Circuit, following the dictates of the Supreme Court, concluded that Flores-Ortega had reasonably demonstrated an interest in filing an appeal, thereby creating a duty for the public defender to consult with him on whether to file an appeal. *Flores-Ortega v. Roe*, 39 Fed.Appx. 604 (9th Cir. 2002). As a matter of law, prejudice was presumed because the public defender had a duty to consult with Flores-Ortega and failed to do so. The presumption of prejudice together with the evidence in the record demonstrated that there was a reasonable probability that, but for counsel's deficient failure to consult with Flores-Ortega about an appeal, he would have timely appealed.

In this case, to determine whether Langford provided ineffective assistance, the Court must decide whether counsel had a duty to consult with me about an appeal because either (1) a rational defendant would want an appeal (for example, because there are non-frivolous grounds for appeal), or (2) that I reasonably demonstrated that I was

interested in appealing. In answering the question of whether a rational defendant would want to appeal her sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal. See *Flores-Ortega*, at 480. Although I did take a plea in this case, the plea agreement contained no such appeal-waiver provision.
On the day of sentencing, Langford did not discuss any possibility of an appeal with me. Langford as an experienced attorney, should have recognized that I had a non-frivolous ground to appeal. On account of the sentence rendered compared to what my attorney led me to believe it would be, it cannot be said that any appeal would have been frivolous and would have been an appeal that no rational defendant would have taken. Criminal defense counsel is not burdened by a general duty to perfect an appeal of every criminal conviction. But counsel is constitutionally required to fully inform the defendant as to her appellate rights. Counsel's duty to a criminal defendant in this context requires, at a minimum, a simple, straight forward explanation of what steps or actions are available to the defendant. The Constitution requires that the client be advised not only of her right to appeal, but also of the procedure and time limits involved and of her right to appointed counsel on appeal. Counsel's failure to so advise a defendant once a conviction is entered falls below prevailing professional standards and is constitutionally deficient performance within the meaning of *Strickland*. *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). As Fifth Circuit precedent makes clear, the Constitution requires that the client be advised not only of the right to appeal, but also of the procedure and time limits involved and of the right to appointed counsel on appeal. Langford's failure to advise me of the foregoing constitutes deficient performance within the meaning of *Strickland*. Had Langford bothered to adequately consult with me after sentencing, and explain to me how the Court arrived at the sentence I received, Langford would have known that I desired to appeal. Counsel's performance deprived me of an appeal I otherwise would have taken. It is submitted that any rational defendant would want to appeal if they were in my position. Because of what occurred Langford was under a constitutional obligation to consult with me about an appeal. In short, I would have appealed "but for counsel's deficient conduct" in failing to consult.

### D. I Suffered Prejudice Due to Trial Counsel's Ineffectiveness.

To prove prejudice, "the defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2001) (quoting *Strickland United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). It is clear that, but for counsel's unreasonable failure to object to the prosecutor's stance, I would have at the very least had an opportunity to obtain a lesser sentence. And, of course, "any amount of actual jail time has Sixth Amendment significance," *Glover v. United States*, 531 U.S. 198, 203 (2001), which constitutes prejudice for purposes of the *Strickland* test. See, e.g., *United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000) (three extra months equals prejudice). I am quite aware that conclusory assertions of prejudice are insufficient to satisfy the second prong of *Strickland*, see *Kinnamon v.*

*Scott*, 40 F.3d 731, 735 (5th Cir.1994),however, *Glover* makes clear that any additional jail time can be prejudicial. It is submitted that Langford's performance at sentencing did not fall within the "wide range of reasonable professional assistance." See *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Because a reasonably competent attorney would have objected to an improper relevant conduct situation, counsel's performance fell below an objective standard of reasonableness. See *Strickland*, 466 U.S. at 687. Had the Court sustained such an objection, a revised sentencing range would have provided for a sentence of significantly less time. See *U.S. Sentencing Guidelines Manual* (2006 ed.). Again, as *Glover* clearly teaches, any amount of extra time in prison can constitute prejudice. In addition, it is submitted that Langford was constitutionally deficient with respect to his "consultation" under *Roe* and that prejudice resulted to me as a result of such. Regardless of any other circumstances that may have occurred in these proceedings, a defendant who claims that counsel's deficient performance actually deprived the defendant of the right to appeal, "need not establish -- as a prerequisite to habeas relief -- that he had some chance of success on appeal." *White v. Johnson*, 180 F.3d 648, 652-53 (5th Cir. 1999). In sum, my attorney provided ineffective assistance, and I was prejudiced as a result.

**Conclusion**

My counsel failed to object to the process utilized by the prosecution to obtain my sentence guideline range beginning with errors in the Pre-Sentence Investigation Report through the statements made on the day of sentencing. Counsel also failed to represent the true and actual facts and potential outcome of the plea agreement. Counsel failed to advise me of my appeal rights or to file a notice of appeal on my behalf. My counsel's representation fell below the reasonable standard of reasonableness, and the ineffective assistance of counsel caused me substantial prejudice. I should be afforded the relief I now seek. My sentence should be vacated and I should be sentenced anew. The new sentence should reflect an appropriate reduction that aligns with the true facts of the case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

5/2/2014
Date                    Signature of Movant